D. L. SHOUN, Trustee v. M. F. GENTRY et al.

Eastern Section.    Otcober 31, 1925.

No petition for Certiorari was filed.

1. **Trusts.  Evidence.   The evidence must be clear and convincing to establish a resulting trust.**
. In an action to set aside a deed as fraudulent against creditors wherein a resulting trust was sought to be established in the wife, held that the evidence must be clear and convincing and the testimony of the husband and wife must be corroborated.

2. **Trusts.  Evidence held not to show a resulting trust.**
In an action to set aside a deed as fraudulent against creditors where it was shown that the wife had turned over all her money to her husband and it had been used by him for a great many years and invested in a great many different projects and there had never been any accounting to the wife and no conveyance was made until after the husband was insolvent, held that such evidence is not sufficient to create a resulting trust and defeat creditors.

Appeal from Chancery Court, Greene County; Hon. Hal H. Haynes, Chancellor.

Shoun, Swingle and Milligan, of Greeneville, for appellant.

Lovette & Berry, of Greeneville, for appellee.

THOMPSON, J.   On July 23, 1923, Mr. M. F. Gentry, a resident of Greene county, Tenn., filed a voluntary petition in bankruptcy in the United States District Court for the Northeastern Division of the Eastern District of Tennessee, at Greeneville, Tennessee.  In this bankruptcy proceedings, Mr. D. L. Shoun was appointed as Trustee, and on February 7, 1924, the Referee in Bankruptcy made and entered an order authorizing and directing Mr. Shoun to file the bill in the instant cause for the purpose of setting aside as fraudulent and void as against creditors of M. F. Gentry, a conveyance of a tract of land in Greene county containing about 30 acres, executed by defendant, M. F. Gentry, to his wife, Mary F. Gentry, on March 22, 1923.   Gentry, of course, had not listed this land as belonging to him in the schedules which he had filed in the bankruptcy proceedings.

Pursuant to this order, and on February 11, 1924, the complainant, Shoun, filed the bill against the two defendants, M. F. Gentry, and wife, Mary F. Gentry.   In addition to the foregoing, the bill alleged that defendant M. F. Gentry, in his schedule filed in the bankruptcy proceedings, had placed a highly inflated value on his real estate, and that the disinterested appraisers appointed by the Referee had appraised it at about one-half the value stated by de-

fendant; that the real estate was all encumbered by mortgages, deeds of trust and vendor's liens, and that with the exception of one piece, it would not sell for enough to pay off the encumbrances; that defendant was wholly insolvent, and had been for more than a year prior to the filing of his bankruptcy petition, and that unless the deed or conveyance of March 22, 1923, from defendant, Mr. M. F. Gentry, to his wife, Mary F. Gentry, be set aside and the property conveyed thereby subjected to the payment of unsecured debts, the general creditors would receive nothing. The bill also alleged that the consideration stated in the conveyance from M. F. Gentry to his wife, Mary F. Gentry, was the sum of $1, and love and affection; that on March 22, 1923, when it was executed, defendant M. F. Gentry was wholly and totally insolvent; that its execution was not only voluntary, but was for the purpose of hindering, defeating and defrauding the creditors of M. F. Gentry, and preventing the title to said land from passing to the Trustee in Bankruptcy. The bill also alleged that defendant Mary F. Gentry took said conveyance with knowledge of the fraudulent purpose and character thereof, and with intent upon her part to aid M. F. Gentry in hindering, delaying and defrauding his creditors.

The bill prayed that the conveyance be declared fraudulent, null and void and be set aside and the property sold and the proceeds paid to complainant as Trustee etc; also for attachment and injunction restraining the defendants from selling, encumbering or disposing of the property. The attachment and injunction were levied and served on February 11, 1924, and February 13, 1924, respectively.

The defendants answered the bill and denied that defendant, M. F. Gentry had placed a highly inflated value on his real estate and averred that the same was listed at exactly cost price. They denied that M. F. Gentry was insolvent at the time he executed the deed or conveyance in controversy. They also denied any purpose which was fraudulent, or which would be calculated to hinder or defeat creditors from asserting claims against any property not exempt. They also denied that Mary F. Gentry had any knowledge of M. F. Gentry's financial status. They alleged that the property involved had been bought with her money received by her from her father, and that that was the real consideration for the execution of the deed of conveyance, etc.

Proof having been taken, the Chancellor decreed as follows:

"(1) The conveyance to Mrs. Gentry, is void for fraud in law, whether fraud in fact entered into the transaction or not. It is without sufficient consideration, as against Mr. Gentry's creditors, on its face; and the record discloses no sufficient, or definite agreement, either at the time title was taken to Mr. Gentry nor since, if that would do, to support the insistence of the wife, that it was her

property when the deed assailed was made to her for a purported consideration of one dollar and love and affection. There seems to be little if any doubt from the record that the husband and wife had so intermingled their affairs and traded, as to render it nearly, impossible to tell what, if any of it, belonged to the wife; and that the business was left to the husband to handle without restriction, or any accounting actually at any time had or contemplated. And that said conveyance was made at a time and in circumstances which renders it void, as to his creditors, can scarcely be gainsaid, as this court construes the record.

. "(2)   Said deed to defendant Mrs. M. F. Gentry is, therefore, hereby declared void, as against complainant, for benefit of the husband's creditors, and set aside, subject to the payment of creditors represented by the Trustee in Bankruptcy.

"No plea of homestead is made, and that question need not be discussed in this decree.

"(3)   The defendants are taxed with the costs of this cause; and unless same together with the debts represented by complainant, which are admitted by Mr. Gentry in this record, are sooner paid, the clerk and master of this court, is ordered, after advertising the sale according to law, to expose said property to public sale, at the courthouse door in Greeneville, on a credit of 6, 12, 18 and 24 months time, and in bar of the equity of redemption. The master will take the notes of the purchaser, in equal installments, bearing interest from date of sale, with personal security thereof, and will also retain a lien for the purchase money, and will report his action in the premises, until which time, further action in this case is postponed."

Defendants have appealed to this court and assigned error as follows:

"(1)   The Chancellor erred in holding that the deed from M. F. Gentry to his wife Mary F. Gentry was void, as against the claims of the husband's creditors and without consideration.

"(2)   The Chancellor erred in holding that the conveyance was void and ordering the property sold by reason of the fact that a period of four months had elapsed from the date of said conveyance until the filing of the petition in bankruptcy."

In support of the first assignment of error it is urged upon us that defendants both testified that the property involved was purchased with money furnished by Mary F. Gentry, and the following authorities are cited: Pillow v. Thomas, Trustee, 6 Tenn. 121; Pritchett v. Wallace, 4 Sneed, 408; Wagner v. Smith, 13 Lea, 569; Sparks v. Taylor, 6 L. R. A. (N. S.) 381.

By complainant we are cited to Acts 1919, chapter 125, known as the Uniform Fraudulent Conveyance Act; and the cases of Sulli-

van v. Sullivan, 86 Tenn., 377; and Clark v. Timmons, 39 S. W., 534.

We do not have the slightest doubt from the evidence in this case that on March 22, 1923, when the deed in question was executed, the defendant, M. F. Gentry, was hopelessly insolvent. Neither do we doubt that his real intention was to defeat his creditors.

At the time he filed the petition in bankruptcy he owned and listed three pieces of real estate. The first was an hotel which he listed at $19,000, and which the appraisers valued at only $7000. This piece was encumbered in the sum of $5,000. The trustee, after trying unsuccessfully for four months to sell this piece, had an auction company to conduct a sale at which it was sold for $7,000. After paying the mortgage indebtedness on it, and the expenses of the sale, taxes, etc., practically nothing was left for creditors. The second piece was a house and lot in Greeneville which defendant listed at $4000. It was mortgaged to the extent of $3140 and was valued by the appraisers at less than the amount of the mortgage indebtedness and the trustee properly elected to abandon this piece because there was no equity in it in favor of the estate. The third piece was a lot of land with a planing mill and machine shop on it. Defendant listed this piece at $3500. It was mortgaged to the extent of $3,000, and was valued by the appraisers at less than the mortgage indebtedness and was properly abandoned by the trustee because there was no equity in it in favor of the estate.

Defendant, M. F. Gentry, had owned several pieces of real estate which he had sold. He had several purchase money notes secured by mortgages on this real estate but had deposited these notes as collateral security for money he had borrowed from various banks, and the proof shows very clearly that nothing for the estate could be realized from these notes.

Practically all of the balance of his assets were claimed by him as exempt. He owed secured debts to the extent of $20,872.35, and unsecured debts to the extent of $3615.05. And he admitted himself that he owed these debts, or rather all but two small ones, on March 22, 1923, when he executed the deed in question to his wife, as well as on July 23, 1923, when he filed his voluntary petition in bankruptcy. The proof also shows that there was no substantial decline in the value of his property, real or personal, between March 22, 1923, and July 23, 1923. So we think that there is not the slightest doubt that he was hopelessly insolvent at the time he executed the deed in question.

But it is urged by defendants that the property sought to be reached was paid for by Mrs. Mary F. Gentry's money which had been given her by her father; that this was the true consideration for the execution of the deed from M. F. Gentry to her and that in

fact she was already entitled to have a resulting trust set up and declared in the property before the execution of the deed.

As has been stated, the land consists of 30 acres. It has a dwelling house on it in which the defendants reside; also a barn. The value is not clearly shown but appears to be about $2000. In the deed sought to be set aside the land is described in three separate tracts.

Defendant M. F. Gentry acquired this 30 acres substantially as follows:

·On September 7, 1901, T. B. Morgan conveyed about 9 acres to defendant M. F. Gentry. This is the second tract described in the deed sought to be set aside.

On March 19, 1902, T. B. Morgan conveyed about 8 acres to defendant M. F. Gentry, who later conveyed 2 acres to the United Presbyterian Church of America; thus leaving him 6 acres. This is the third tract described in the deed sought to be set aside.

Beginning about the year 1909, the Hensley heirs by several separate deeds conveyed about 31¼ acres to defendant M. F. Gentry, who later conveyed 15 acres to G. B. Bowen, thus leaving him about 16¼ acres. This is the first tract described in the deed sought to be set aside.

Thus on March 22, 1923, defendant M. F. Gentry had the title to three separate tracts of land; one containing 9 acres; another containing 6 acres; and another containing 16¼ acres; the three tracts lying side by side and making one large tract containing more than 30 acres and on which he had the residence and barn.

The residence was on one of the tracts which he had bought from T. B. Morgan, and prior to March 22, 1923, he had sold this residence and two acres of land to some one, and had bought it back again.

For the past 20 years defendant M. F. Gentry had dealt more or less in real estate; having bought and sold a number of tracts of land; also he had bought and operated an hotel, a planing mill, machine shop, a mercantile business, a grocery business, etc. All of his transactions were in his own name; except that the title to one lot near Greeneville was in the name of his wife and this lot had been sold long prior to March 22, 1923, and the proceeds used by him in a mercantile business he was operating at the time.

He and his wife testified generally that more than 20 years before March 22, 1923, Mrs. Gentry's father had given her $200 which she had turned over to her husband, M. F. Gentry, to be invested for her, and that $190 of this money paid the purchase price of that part of the 30 acres which had been bought from T. B. Morgan. They also testified generally that the money which was paid to the Hensley heirs for that part of the 30 acres which had been acquired from them, was her money. She says she got this money by raising tobacco for 18 years. He says she got it from the sale of her lot

near Greeneville but after he had had the money derived from this sale invested for a while in a mercantile business which he operated.

Her father testified that about twenty years ago he gave her $200 and charged it against her in his will as an advancement, but there is no corroboration of their testimony that this $200 paid the purchase price of any part of the land in controversy. Neither is there any corroboration of their testimony that her money paid the Hensley heirs.

They do not claim that the $200 was kept separate from Mr. Gentry's money, nor that any of her money was ever kept separate from his, and their attempt to trace her money into the purchase price of the 30 acres is vague and uncertain and their testimony in several instances conflicts one with the other. How vague and indefinite their testimony was, is shown by the following: She testified about the $200 as follows: "It had been invested in different ways and been changed around." In regard to how she acquired the money which she claimed paid the Hensley heirs, she said: "Raised tobacco for 18 years and got money in that way and kept investing it in different lands and different places until we got it all kinder together." Mr. Gentry said: "The deed was in my name but my wife had something in it, and we had just traded around and the deed all the time was in my name." Again in speaking of her money, he said: "We just invested it in different ways, first in the mercantile business and used it for anything we could speculate on."

They both testified that she had been trying for 20 years to induce him to execute a deed conveying the 30 acres to her, and yet they both stated that while he recorded the deed on March 23, 1923, the day after he executed it, yet she did not even know that it had been executed until two months thereafter.

The arguments made upon behalf of defendants and the cases cited by them are to the effect that Mrs. Gentry was entitled to have a resulting trust set up in the 30 acres and that this was a sufficient consideration to support the deed to her. But no case has been cited, and we have found none, where a resulting trust was set up or declared, or a voluntary conveyance sustained against creditors, upon evidence so vague, uncertain, unconvincing and contradictory as is the evidence of the two defendants in this case, and without corroboration by any other witnesses, facts or circumstances. That in such cases the evidence must be very clear and satisfactory and that the testimony of husband and wife must be corroborated, is held in: Hyden v. Hyden, 65 Tenn., 406; Page v. Gillentine, 74 Tenn., 240; Tardison v. Bilington, 82 Tenn., 346; Gates v. Card, 93 Tenn., 334; Insurance Co. v. Shoemaker, 95 Tenn., 72; Crane & Co. v. Hall, 141 Tenn., 556.

After carefully examining the evidence of the defendants and the authorities cited in the brief filed in their behalf, we are clearly of opinion that the Chancellor was not in error in setting the deed aside and ordering the sale of the land. The first assignment of error is therefore overruled.

The defendants advance no argument and cite no authority or decision in support of their second assignment of error, and we can think of no theory upon which the defense therein advanced, i. e., that the deed was executed more than four months prior to the filing of the voluntary petition in bankruptcy, can be sustained, as there is no limitation of four months upon the filing of bills to set aside fradulent conveyances. The second assignment of error is therefore overruled.

It results that there is no error in the decree of the lower court and the same will be affirmed and the cause remanded to the lower court for the purpose of carrying its decree into effect.

The costs of the appeal will be paid by defendants, M. F. Gentry and Mary F. Gentry and C. E. Gentry and John F. Jones, sureties upon their appeal bond.

Portrum and Snodgrass, JJ., concur.